Let's proceed with our last case, which is 19-4155, United States v. Crespin. Ms. Puri, you may proceed when you're ready. Thank you, your honor. May it please the court, Bretta Puri on behalf of Ricky Ray Crespin. This case asks the court to determine whether the statutory maximum sentence set out in federal criminal statutes does indeed set out the maximum time in prison a defendant can serve for committing a particular federal crime. The Supreme Court made it clear in Johnson that the punishment for violations of supervised release are attributed to, relate back to, are part of the punishment for the original underlying offense, not for the violation of supervised release. Viewing these punishments in a different way, the Johnson court warned, raised serious constitutional questions. And the serious constitutional questions that were raised by treating the supervised release statute as this parallel separate system of punishment and violation were apprendi problems. The problems that that system raised were that the operative facts determining punishment would be determined by a judge on a preponderance standard rather than by a jury beyond a reasonable doubt. The Supreme Court recently returned to this problem. Sorry, Judge Hart. In this case, what findings did the sentencing judge make? When I say sentencing at the time of revocation, what findings did the judge make that increased the maximum sentence possible or increased or created a mandatory minimum? The findings that the judge made were on the statutory maximum side, not the mandatory minimum side. And the factual findings of the violation in this case increased the statutory maximum sentence. The problem isn't in the... No, but the statute regarding revocation of supervised release, as I understand it, sets the maximum sentence you can impose for violation of supervised release. And that maximum is based on the original offense, the underlying offense. Now, in the case the Supreme Court decided recently, that we rely on, a finding by the judge actually increased the statutory maximum, the maximum penalty that could... Or maybe it was mandatory minimum. Yes. Once... That could be imposed for violation of conditions of release. Because those maximum or minimum were not rigidly set by statute. But it looks like for this violation here, in this context, the statutory maximum sentence, the violation of conditions of release was already set. So I'm asking, did he say... Did the judge say... I can't remember if it was male or female. Did the judge say, since I find you did this wrong, I can now impose the sentence of three years, whereas I could only have imposed the sentence of one year for violation of conditions of release. Had I not made this finding? No. The finding wasn't that the severity of the violation conduct triggered a sentence in excess of the statutory maximum. The problem with Mr. Crespin's case was that any factual finding of any violation, because he'd already served the statutory maximum, was going to trigger a sentence in excess of the statutory maximum. Does that answer your question, Judge Hartz? Or are you asking... That's not an apprendi problem. Apprendi... Apprendi... If that's a problem, then that would be true under guidelines sentences. If you just impose the sentence after making the guidelines calculation, because there's a statutory maximum, but if you don't find that these particular enhancements are applicable, then you won't sentence under the guideline quite so much. But it seemed to me that this was different from the Supreme Court case, in that a finding in the Supreme Court case, a finding by the district court at the hearing to revoke... the hearing finding violations of conditions of supervised release, that those findings by the court increased what would otherwise have a three-year maximum for violations to a five-year maximum for violations. So the judge was making a finding that increased the statutory maximum. And that's what apprendi deals with, if it increases the statutory maximum. But I don't see a finding, I could easily have missed it, but I didn't see any finding here at the revocation hearing that increased the maximum possible penalty the judge can impose or impose the mandatory minimum. Well, I think the difference we're having here, Judge Hartz, is whether the judge's findings increase the range of punishments under the supervised release statute, 3583, which is not our contention. And it's not our contention that the severity of the findings of the violation made a difference, the severity of the violation. Our contention instead is, and I think this one does fit nicely with apprendi, is the jury's verdict in Mr. Cressman's case authorized a statutory maximum sentence of imprisonment of 10 years. And it also authorized supervised release. Yes. Which could lead to further incarceration. But this is exactly- Statutory maximums were not affected. You're concerned that there's another statutory provision other than the one that sets the maximum penalty for the initial offense. But that's not an apprendi issue. I'm not saying that's a bad argument. It's just not an apprendi argument. I see it as an apprendi argument for this reason, Judge Hartz. In apprendi, the jury's verdict authorized a certain sentence. It also triggered another statute that permitted an increase in that statutory maximum sentence based on judge found facts. This is exactly what happened in this case. The jury's verdict authorized a 10-year statutory maximum sentence and triggered another statutory scheme that allowed a judge on judge found facts to increase that statutory maximum. This is exactly what happened in apprendi. The problem in Haymond is an Alain problem. But again, it's the same problem. The jury's verdict in Alain authorized a certain statutory range. It also triggered a statute that allowed a judge based on judge found facts to increase the mandatory minimum sentence, which is what 3583K did in Haymond. Once the judge made some factual findings at the revocation hearing, it triggered this additional mandatory minimum. So the existence of another statutory regime that purports to authorize an increase in the statutory maximum is no guarantee that that's going to be a constitutional statute in every application. It's our contention that 3583 normally isn't a problem because defendants aren't normally sentenced to the high end. They don't normally get the statutory maximum sentence in their original sentencing. The data in Haymond was that only one percent of criminal defendants get the stat max in their underlying sentence. So most of the time. What's the remedy that we can supply at this point? I mean, he served his term of imprisonment, right? And he hasn't been resentenced yet for whatever happened most recently. But what can we offer him at this point if he served the time? The remedy we can offer him is that the court has recognized is the ordinary remedy under Vera Flores and its progeny is that we send it back to the district court to vacate the sentence and reimpose a sentence, which may or may not decrease the term of supervised release. But that still is a remedy that offers Mr. Crespin relief. And it's the remedy this court has recognized as being adequate to defeat mootness. Can he go back into to the sentencing court and ask for modification of the terms and conditions of the supervised release, even without the court doing the appellate court doing anything? He cannot. I don't believe under these circumstances, because I think the statute requires you to have already served a year of supervised release, which he has not done because he doesn't get credit for the time that he spent in prison. So he has not yet served a year of supervised release. But he doesn't he doesn't have to do that because, as I said, the ordinary rule under ordinary circumstances is that a defendant who has an unexpired term of supervised release and who had a purely sentencing based, not supervised release, but substantive sentencing based appeal can ask this court to vacate his sentence and remand it back to the district court for resentencing. How do you deal with Justice Breyer's concurrence, which is the controlling decision in Haman, specifically where he kind of he notes that he does not see a problem with, you know, run-of-the-mill revocation proceedings? And this is not a run-of-the-mill revocation proceeding. As I said, it's very unusual for the defendant to be sentenced to the statutory maximum, and so it's very unusual for a revocation sentence to exceed the statutory maximum. And in particular, if I could go on, Justice Breyer. You're going to have to elaborate on that. I just don't see how that makes this something other than a run-of-the-mill revocation. It speaks to maybe the consequences. I just don't see why this is not just your basic revocation proceeding. Because it creates an apprendee problem. And if I could enlarge upon Justice Breyer's concurrence, I think it's logically necessary that the sentence in excess of the statutory maximum creates an apprendee problem. And the reason is that Justice Breyer's concurrence relies entirely upon Allain, which talks about mandatory minimums being indistinguishable from sentences that raise the statutory maximum under apprendee. It's the same problem, and you can't have one without the other. But I think it looks to me like Breyer's opinion says that anything under 3583e is the run-of-the-mill revocation. The problem is, that makes this peculiar, or I think is said particular, is that this was under, in Heyman, it was under 3583k. Yes. I don't think he says it's extraordinary. I think he says a run-of-the-mill revocation under 3583e doesn't present a problem. I think he's fairly careful to avoid saying that any sentence that exceeds a minimum under 3583e3 is still okay. And I would return again to the fact that he cites Allain, and Justice Breyer's own opinion in Allain says there's no difference between a mandatory minimum for apprendee purposes and a judge-found fact that increases a statutory maximum for apprendee purposes. And he also cites Johnson, saying that the revocation penalty is part of the punishment for the original offense. He says in regard to 3583, there is no similar mandatory minimum triggered by judge-found facts. That's true. That he is saying that apprendee does not apply. This is not an apprendee problem. This is an entirely separate thing from his underlying sentence. And it's punishment for separate conduct, not the conduct that generated the Well, it can't be an entirely separate sentence from the underlying offense without violating the rule in Johnson. It has to be, as Johnson says, part of the punishment for that original offense. That's true. You cannot have a 3583e proceeding unless you have another sentence. It's always tied to that. You can't have a free-floating proceeding for violation of supervised release. You can't have supervised release unless you have an underlying sentence. And that's what Johnson meant. Johnson means it has to be tied to it in a particular way. And Johnson highlights the fact that if it isn't, it creates apprendee problems. And again, in citing Allain, in relying entirely, Justice Breyer's three factors that he says make 3583 problematic are all Allain problems. And then if that weren't clear enough, the only citation he makes to authority is to Allain. And Justice Breyer himself says they're the same problem. Allain's problem is there was a mandatory minimum. Specifically in Breyer, he notes that under 3583, there is no similar mandatory minimum. Right. And that is the focus of his concurrence. Yes. But in Allain, Justice Breyer says there is no principled basis for distinguishing between a mandatory minimum based on judge-found facts and an increase in the statutory maximum based on judge-found facts. That is why Breyer actually concurred after dissenting in Apprendi. In Allain, he said Apprendi is the law of the land. And under Apprendi, there's no basis for distinguishing between mandatory minimums and increase in statutory maximums. It's logically necessary. And I've exceeded my time. Thank you, Counsel. Let's hear from the Governor, Ms. Stevens. Thank you, Your Honor. May it please the Court, Elizabeth Ann Stevens, Assistant United States Attorney for the District of Utah. Ms. Stevens, before you get going, what about the different positions from Justice in Washington, in Salazar, and your position in this case? Have you changed your position? No, Your Honor. I think the cases that are cited by Mr. Crespin and the case I cite, the Miller case, are actually consistent. And this is how I would explain that. Under Myers, the appellant must have suffered an injury that can be redressed by a favorable judicial decision by the appellate court. And in Castro, Rocha, and Westover, the offense level that the district court used in those cases called for a sentence of more than one year in prison. If a favorable decision had been rendered on behalf of the defendant, it would have changed the offense level to a sentence permitting a sentence of below a year. Now, the Chapter 7 supervised release policy statements say that a court shall impose a term of supervised release when a sentence is over a year. So here, if the sentence could have been less than a year in Castro, Rocha, and Westover, it would make sense that it could have gone back to the district court, it would have changed the sentencing package, and the term of supervised release could have been shortened or perhaps not given at all. Why then did not this court's decision in Westover and Montgomery, cited in the Salazar Supplementary Release, why didn't that just expand Castro, Rocha, beyond what you say it's limited to? Well, I think it could have, but then I don't know what to do with Miller. Well, Miller did wrong. It didn't follow precedent. It didn't cite Westover and Montgomery, did it? No, it didn't. It didn't cite that line of cases. You're absolutely correct. If Miller is wrong, then yes, this case is definitely not moot. Okay. Tell me why Miller then controls and not Westover and Montgomery. I wouldn't say that Miller controls. I still think that Miller is consistent because Miller looked at whether a judgment by this court would have a, what was the language, more than a speculative chance of affecting the defendant's rights. And so then I look at the specific facts here involving Mr. Crespin. So before he went out on supervised release the first time, he walked away from the residential treatment facility. So he was charged with escape. So he didn't get to go out on supervised release right away. Then he finally went on supervised release after serving his escape imprisonment term. And six days later, he violated. And that's what happened here in the district court in this case. So then he gets sentenced, as we know. He's released again. And now he's presently back in front of the district court. So I look at those facts and I say, well, what is it, what is the likelihood of the district court saying, gosh, Mr. Crespin, you did such a great job on supervised release. I'm going to reduce it now. Seems unlikely. But I want to be clear. If the court believes that Miller is absolutely incorrect then, and this distinction makes no difference, then I would agree that the case is not moved. But that was in my mind how I could make sense of them. Do you think it is clear that Westover and Montgomery are limited to the Castro-Roca facts and do not expand Castro-Roca? I would not go that far, Your Honor, no. All right. Thank you. So what Mr. Crespin is doing is asking this court to hold that Section 3583E3 is unconstitutional. But he has pointed to no case from any court under any standard of review that has reached the conclusion he asks this court to reach today. Moreover, a significant portion of his argument, especially today, is based on a theory that he never presented to the district court. And this court does not write on a blank slate. Both Robinson and Cordova require this court to reject Mr. Crespin's argument. In addition, the recent unpublished order in Ewing, which applies Cordova, provides additional support for the conclusion that Mr. Crespin's argument should be rejected. And I want to highlight the waiver argument here, because a reading of the transcript reveals that this argument about the district court not being able to impose any kind of jail time was never raised in front of Judge Campbell. In fact, Mr. Crespin's attorney mentioned the beyond a reasonable doubt standard of proof four times during the revocation proceeding. The argument he was making was if Judge Campbell wanted to impose any jail time, the allegations had to be proven beyond a reasonable doubt and to a jury. He never, ever said, Your Honor, you may never impose a day of prison on Mr. Crespin because he served 10 years on his underlying conviction. So four times. Counsel, I'm not sure I understand the distinction. Isn't that argument simply an apprendee argument that you can't extend the sentence without a jury finding beyond a reasonable doubt? And isn't implicit in that that the judge can impose any additional prison time? I'm not seeing the distinction between what you're saying should have been argued and what was argued. If Mr. Crespin's position in the district court was that. The court could not impose a single day of imprisonment because he served his underlying statutory maximum on the 922 G. He never would have mentioned the beyond a reasonable doubt standard of proof. He makes a clear distinction between can the court. Do it by a preponderance or must it do it beyond a reasonable doubt to the jury and. It's clear from the question that Judge Campbell asked. Mr. Crespin's lawyer, she said. I think I understand what you're telling me, sir, but I want to make sure because I know it's crucial because Mr. Crespin served the maximum possible. I understand under the statute of his original offense. Felon in possession. The two violations which are not felon in possession, of course, but the violations of supervised release. If they are going to bring additional time, it must be proved beyond a reasonable doubt. Is that what you're telling me answer? Yes. And to a jury not know your honor. You misunderstand. My argument is that under any burden of proof, you may not at all give another day of prison to Mr. Crespin. And that's the argument that we heard in the brief. That's the argument we heard today relying on Johnston in this aggregation theory. I just want to point out the district court never had an opportunity to rule on that particular argument. In any event, under Robinson and Cordova, Mr. Crespin's argument must be rejected. And he states that the Breyer concurrence relies on a lien, but he doesn't cite any cases that say the Breyer concurrence relied on a lien or apprendi. And in fact, Justice Breyer specifically said he was not transplanting the apprendi line of cases into supervised release. The Fourth Circuit in Costin says that Justice Breyer's concurrence says apprendi in a lien do not apply in a supervised release context, and that no majority endorsed the application of a lien in the supervised release context. The Second Circuit in Doca notes that the Breyer concurrence rejected efforts to transplant the apprendi line of cases into supervised release. The Third Circuit in Samen noted Justice Breyer's refusal to transplant apprendi into supervised release. And the Eighth Circuit in Eagle Chasing said the concurrence outright asserts the right to jury trial is not implicated under E3 revocations. And once that argument falls, that Justice Breyer relied on a lien, the entire argument comes crashing down, even without Robinson and Cordova, which are binding on this court. If there are any questions? Counselor, you're free to cede your time. And why don't we give Ms. Pirie 60 seconds for a rebuttal. Thank you, Your Honor. I think the mootness question has been handled well by the court. I would reiterate that Mr. Cressman's counsel repeatedly indicated that this would be increasing the statutory maximum. He invoked Haman repeatedly. I think the judge took a break to go back and read Haman. It is not as though these arguments were not presented to the district court. And as I pointed out in the briefing, he made them repeatedly. We've distinguished Cordova in our briefing. It does not speak to the question of the issue here. I would like to mention in passing that in Robinson, the defendant actually conceded the allegations, admitted the allegations of supervised release. While I think this court should and can overrule Robinson in light of Haman, it could be argued that this court could distinguish Robinson because it was based, the sentence there was based on admitted facts, not facts found by a judge. Ms. Perry, do you agree that if we rule in your favor on the merits, that we would be creating a circuit split in relation to the cases that Ms. Stephens referenced at the end of her argument? Not with regard to all of them, but with regard to some of them. But this court- So if there's one, there's a circuit split, right? Yes. But the other ones you say, well, you're not creating a circuit split. They don't take your position either, do they? They do not. But that doesn't mean- So it would be a flat out circuit split, right? But this court has reversed its own precedent. I'd like to point out recently in Boettcher, which also involved a circuit split, which also involved, you know, cases that weren't directly on point. So it would not be unprecedented. I wholly agree. I sit in the Ninth Circuit and they say, we don't care whether it's a circuit split. I would regret to- I would be grieved to see this court follow other circuits into error. Well done. And your time's expired. We appreciate the U.S. attorney in Utah finding her way into the correct courtroom for us today. So that was impressive. Thank you, counsel, for your arguments. Those were clarifying your excuse and the case shall be submitted.